## No. 15,246.

HARRIS *v.* HARRIS.

(154 P. [2d] 617)

Decided December 18, 1944.

Mr. L. F. Butler, for plaintiff in error.

Mr. Philip Hornbein, Mr. Theodore Epstein, for defendant in error.

*In Department.*

Mr. Justice Jackson delivered the opinion of the court.

This case involves a question of modifying an award of alimony. The parties were married in 1909. In 1935 the husband brought suit for divorce. The wife filed a cross complaint and on the subsequent trial was granted a decree of divorce. No question of the custody of children was involved, their one son having reached his majority. The seventy dollar monthly alimony awarded temporarily to the wife in the interlocutory decree was made permanent in the final decree of May 21, 1937. The parties also agreed to this monthly payment in a stipulation dated June 16, 1937, which they duly signed and which was filed in the divorce proceedings and approved by the court June 19, 1937. This stipulation in addition to (1) the provision for alimony, (2) allowed the family home and contents to remain the property

of the wife (estimated value $3500), and (3) provided that the husband should keep up the premium payments on a $3,400 life insurance policy in which the wife was named beneficiary. A fourth provision read as follows: "It is further agreed by the plaintiff, that if the defendant obtains employment or secures additional income by means of employment, or obtains funds from boarders or roomers, whomsoever they may be, that this fact or facts shall not be presented to the court as a ground or reason for the reduction of the permanent alimony hereinto agreed, and in no way shall it affect the payment of the alimony herein agreed." And fifth, it was agreed that the husband should pay the fees of defendant's attorney, as well as court costs.

September 30, 1941, the husband filed a motion to reduce the amount of the alimony payments. The wife's motions to dismiss and for attorney's fees were denied. From the evidence introduced in the subsequent trial, it appeared that the husband had been at all times since the date of the original divorce action a locomotive engineer; that his monthly wages had risen somewhat during the intervening time to $300 or $310 per month; that his federal income tax for 1940, payable in 1941, was $90, whereas he would owe $284 in 1942 as a tax on his 1941 income; that monthly deductions of nine dollars being made from his earnings would entitle him to a monthly retirement annuity of $110 when he reached the age of sixty-five years—he being, in 1941, fifty-eight years old. He also owned an oil royalty that was paying him $1.25 a month. The alimony payments he had already made to his former wife totaled over $5,000, and he had kept up the insurance premiums on the life insurance policy. The former wife, in the meantime, had furnished some lodging, but not food, to a sister. She had brought up a nephew, who had worked steadily for the eight months preceding the trial and at that time was earning seventy dollars a month out of which he contributed to the expense of groceries. She,

feeling the need for more funds, had for nine months preceding the hearing been working in a position that paid nine to eleven dollars a week. Her age at the time was fifty-nine years. She testified that she had been to considerable expense to keep the house repaired, including the cost of re-roofing it; that the annual property taxes on it had increased—formerly they were $40 or $50 and now they were $75; that she still owed $350 or $360 on account of expenses incurred in the upkeep of the home, and had not been able to afford dental work that she needed, but that she had paid $275 for expenses of a surgical operation.

The trial court entered an order reducing alimony payments from seventy to forty dollars a month, and further ordered that all alimony payments should cease when the husband reached the age of sixty-five years and became entitled to the railroad retirement payment of $110 monthly.

 We have held that a decree for alimony may be modified from time to time as changed circumstances require. *Prewitt v. Prewitt,* 52 Colo. 522, 122 Pac. 766. In *Jewel v. Jewel,* 71 Colo. 470, 207 Pac. 991, we confirmed the rule that a court of equity, by virtue of its general powers, has authority to modify a decree relative to alimony when changed circumstances make it just and necessary. Both of the foregoing cases were decided prior to the enactment of section 8, chapter 56, vol. 2, '35 C.S.A. in 1917 (L. '17, p. 182, §7; C.L. '21, §5599). Subsequently we held in *Huff v. Huff,* 77 Colo. 15, 234 Pac. 167, that, although this section in the 1917 act relating to alimony did not specifically authorize it, the courts still had the power to modify a divorce decree relative to alimony payable in the future, as the changed circumstances of the parties might render necessary and just. In *Low v. Low,* 79 Colo. 408, 246 Pac. 266, we laid down the rule that the courts should proceed with caution in changing or modifying an alimony decree, and reaffirmed the rule in *Neuhengen v. Neu-*

*hengen,* 92 Colo. 155, 18 P. (2d) 454, adding, that such decrees should not be modified unless it clearly appeared that the original decree was no longer equitable. In *Low v. Low, supra,* we held that where the evidence does not show a change in the circumstances of the parties, an order of the trial court reducing alimony will be set aside on review and ordered the petition dismissed.

We believe the instant case is controlled by *Low v. Low, supra.* There, as here, there was a monthly alimony payment provided in the divorce decree, followed by a stipulation or property-settlement contract. The stipulations are similar in nature and both were relied upon in the subsequent litigation. In the Low case we discussed the law relative to such separate contracts without deciding the case on that point, holding that there was not sufficient showing of changed circumstances. There, as here, the income of the petitioning husband had actually increased over the period since the divorce proceedings. In the instant case the husband has not remarried. In the Low case he had. The trial court in the instant case used the following words in ordering the reduction: "Now, as the court looks at it, he has changed his condition to this extent: According to the evidence and the law, he is supposed to be retired under that act at 65 * * *. In other words, he has seven years' of work. * * * The court is of the opinion that ought to be taken into consideration — the fact he has not accumulated anything himself, and has seven years' work, and that at the end of age 65, according to the evidence, he will get $110.00 a month."

In our opinion no new set of circumstances intervened between the granting of the divorce and the present proceeding that would justify a change in alimony payments. The facts upon which the trial judge commented were existent and were part of the evidence before the judge in the divorce action. The trial judge in the instant case would appear merely to have substi-

tuted his judgment for that of the judge in the original divorce proceeding. We may properly conclude in the very words used in *Low v. Low, supra:* "We are convinced, after reading carefully the evidence, that the trial court was not justified in reducing the alimony and, under good practice, the case is one for this court to interfere to set aside its findings. See 19 C.J., p. 273, sec. 619; p. 274, sec. 620, note 69 and cases cited."

The judgment is reversed, with instructions to dismiss the petition and allow a reasonable attorney's fee to plaintiff in error.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE HILLIARD concur.